UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER KELEMENCKY,<br>    Plaintiff, | : | CIVIL ACTION NO.<br>3:01CV-1811(SRU) |
| vs. | : | |
| STATE TROOPER CUSATO, *et al.*<br>    Defendants. | : | June 22, 2004 |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**

The plaintiff, Peter Kelemencky, filed five (5) motions in limine, dated June 9, 2004, to preclude the defendants, State Troopers Cusato, Lukienchuk, DeSousa, Pandiscia, Blake, Dolan, and Middlebury Police Department Sergeant Wildman (collectively, the "defendants")[1], from admitting certain evidence during trial of the above referenced matter. In particular, plaintiff filed a Motion to Preclude evidence of his refusal to take a blood/alcohol test, evidence of his prior arrests and litigation with the police, evidence of the officers' conclusion that the plaintiff was intoxicated, evidence of the presence of beer cans and bottles in the plaintiff's vehicle, and evidence of the plaintiff's health insurance. With the exception of the Motion to Preclude the plaintiff's health insurance,[2] Sergeant Wildman respectfully objects to each of the plaintiff's other motions in limine. For the reasons articulated more fully below, these motions should be denied.

---

[1] This Memorandum is filed on behalf of Sergeant Wildman.
[2] Defendants do not object to plaintiff's Motion to Preclude Re: the plaintiff's health insurance.

365716

## FACTS

### 1. Sergeant Wildman Responds to a Domestic Disturbance Call

Sergeant Wildman had been dispatched to a call at the Middlebury Hamlet located on Route 64 in Middlebury, Connecticut, to meet a female at a pay phone who was in a domestic dispute. Sergeant Wildman responded to this call with his partner, Officer Blick.

Sergeant Wildman met with Heather Paladino, who was visibly upset, and her friend, Thomas Cicchiello. Ms. Paladino told Sergeant Wildman that she was at her house located at 154 Lighthouse Road in Woodbury, Connecticut, and that her husband, Joseph Paladino, who she was divorcing, broke into her house. Ms. Paladino explained that her husband walked up to her in the kitchen, put a revolver handgun to her head and stated "I'm going to kill you." Mr. Cicchiello, who witnessed these events, told Joseph Paladino to calm down and managed to thwart the death threat. Mr. Cicchiello and Ms. Paladino then ran from the house, got into Ms. Paladino's mini van and fled while Joseph Paladino chased them on foot down the road with the gun. They fled into Middlebury and had called the police from a pay phone.

Sergeant Wildman explained to Ms. Paladino and Mr. Cicchiello that because the incident happened in Woodbury, Connecticut State Troop L and the Woodbury Police would have to investigate the matter. During their discussion, Ms. Paladino also told Sergeant Wildman that Joseph Paladino was driving a full size Ford Bronco or a full size Ford Pick-up Truck. Sergeant Wildman notified Connecticut State Police Troop L of the incident and escorted Ms. Paladino and Mr. Cicchiello to the Woodbury Resident Troopers Office for their safety.

As they approached the door of the Woodbury Resident Trooper's Office, a vehicle drove into the parking lot and illuminated all of them with its high beams. The vehicle matched the description of Joseph Paladino's vehicle. Ms. Paladino and Mr. Cicchiello yelled, "that's him." Understanding their yells to mean that the driver of the vehicle was Joseph Paladino, Sergeant Wildman moved Ms. Paladino and Mr. Cicchiello to safety. Sergeant Wildman then yelled for assistance from Officer Tokarz of the Woodbury Police and a State Trooper Pandiscia. The Ford Full Size Vehicle, which matched the description of Joseph Paladino's vehicle, then fled out of the parking lot and onto north bound Route 6.

2. **Peter Kelemencky Refuses to Obey the Police Officers' Commands**

Knowing Joseph Paladino was armed, Sergeant Wildman followed Officer Tokarz and the Connecticut State Trooper to increase their manpower. As he came up Route 6 in the area of the LaBonne's Market, Sergeant Wildman saw a green full size Ford Pick-Up Truck on the right shoulder. Sergeant Wildman also saw a white male who appeared to be intoxicated and was holding the truck for support as he walked. The white male was later identified as the plaintiff.

The responding officers repeatedly told the plaintiff to stop and "get on the ground." The plaintiff, however, ignored their commands. In defiance of their orders, the plaintiff stood in the road and put his arms in the air. Continuing to ignore the officers' repeated commands to get on the ground, the plaintiff then walked toward the police cars. He then turned around and began walking towards the cab of the Ford Pick-Up Truck, in which the driver side door was open.

After ignoring the officers' commands, Sergeant Wildman ran up to the plaintiff to assure he didn't get into the truck out of concern for his safety, and the safety of the other police personnel.

Sergeant Wildman believed the plaintiff might have been reaching for a weapon. Sergeant Wildman grabbed the plaintiff's shirt at the left shoulder and told him to get down. The plaintiff reached out and grabbed the bed of the Ford Pick-Up Truck for support and to hold on. Sergeant Wildman, who was assisted by the other responding officers, pulled the plaintiff back onto the ground and took control of him. Whereupon, Officer Tokarz placed the plaintiff in handcuffs.

Sergeant Wildman did not charge Peter Kelemencky with a crime. Rather, the Connecticut State Police took him into custody. Trooper DeSousa of Troop L of the Connecticut State Police charged the plaintiff with Interfering With an Officer and Driving Under the Influence. Trooper DeSousa then transported the plaintiff to the Woodbury Police Barracks and called an ambulance to treat a small laceration on the plaintiff's head. After Officer Tokarz placed Peter Kelemencky in handcuffs and Trooper DeSousa called an ambulance, Sergeant Wildman returned to his patrol duties for the Middlebury Police Department.

The Woodbury Ambulance Association responded to Trooper DeSousa's call, treated the "abrasion" on the plaintiff's head and transported him to Waterbury Hospital. The plaintiff was treated and released that same evening from the hospital.

The plaintiff is now seeking damages for civil claims including excessive force, false arrest, malicious prosecution, conspiracy, and intentional infliction of emotional distress. He seeks to exclude significant amounts of evidence relevant in describing the situation which the defendants were presented with during their encounter with and arrest of the plaintiff. In particular, he seeks to exclude evidence of his failure to take a blood/alcohol test, evidence that the defendants perceived him as being intoxicated during the encounter, and evidence of empty alcohol containers found in his

vehicle at the time of arrest. In addition, he seeks to exclude evidence relevant to his credibility of his previous arrests and previous litigation against the police. The defendants respectfully submit that these motions should be denied and the evidence admitted.

## ARGUMENT

I. **THE DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF THE PLAINTIFF'S REFUSAL TO SUBMIT TO A BLOOD/ALCOHOL TEST**

The plaintiff has argued that evidence regarding his refusal to submit to a blood/alcohol test is irrelevant and unfairly prejudicial, and should therefore be excluded. Relevance is broadly defined as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. As Plaintiff's Motion in Limine suggests, evidence of the plaintiff's refusal to submit to the blood/alcohol test might lead the jury to infer that the plaintiff was uncooperative or intoxicated. Because the plaintiff's claims necessarily bring into dispute the reasonableness of the defendant's conduct in the course of arresting the plaintiff for Interfering with an Officer and Driving Under the Influence, details leading the jury to believe that the plaintiff was uncooperative or intoxicated are relevant in that they indicate that the officers reached a reasonable conclusion about the plaintiff's attitude and condition.

In McKinney v. Galvin, a plaintiff brought claims of excessive force, false arrest, and illegal search and seizure against the police officer who arrested him for driving under the influence. See 701 F.2d 584 (6th Cir. 1983). The Sixth Circuit held that evidence of the plaintiff's refusal to submit to a blood alcohol test was properly admitted over the plaintiff's objections that the evidence was

irrelevant and unfairly prejudicial. The court held that in offering the potentially exonerating test to the plaintiff, the arresting officer demonstrated a good faith belief that the plaintiff was intoxicated. Id. at 587. That belief was then fortified upon the plaintiff's unexplained refusal. Id. at 587. Here, in a nearly identical civil action where the reasonableness of the officers' conduct is again at issue, the plaintiff's refusal to submit to the proposed blood alcohol test is equally relevant and therefore should not be kept out under either Rule 401 or 403.

The plaintiff argues that the evidence presents a risk of unfair prejudice because the jury might make incorrect inferences about why the plaintiff refused the test. This argument overlooks the plaintiff's own ability to explain his refusal to the jury, which mitigates the potential risk of unfair prejudice. See Penfield v. Venuti, 589 F.Supp. 250, 255 (D. Conn. 1984). Relevant evidence may be excluded for being unfairly prejudicial only if its probative value is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. But here, the only risk that the plaintiff is exposed to through the introduction of this evidence is that the jury will not believe his version of events. Such risk is no different in this context than in any situation in which facts are disputed before a jury. Though this evidence may ultimately be damaging to the plaintiff's claims, there is no reason to believe that it would damage him unfairly.

Finally, the type of inferences that a jury might draw from the plaintiff's refusal to take the blood/alcohol test are analogous to the type of inferences a jury might draw when a witness exercises his Fifth Amendment right against self incrimination because both involve situations where the party refuses the opportunity to exonerate himself. Even constitutionally protected refusals to testify are admissible in subsequent civil trials because of the relevant inferences they establish. See Penfield v.

Venuti, 589 F.Supp. 250, 255 (D. Conn. 1984)("A refusal to answer questions upon assertion of the privilege is relevant evidence from which the trier of fact in a civil action may draw whatever inference is reasonable in the circumstances."). There is no reason to treat the plaintiff's refusal to submit to a blood/alcohol test, which is not a constitutional right, with greater deference than a civil defendant's refusal to testify.

## II. THE PLAINTIFF'S PRIOR ARRESTS AND PRIOR LITIGATION WITH THE POLICE SHOULD BE ADMITTED BECAUSE THESE INCIDENTS INDICATE A BIAS AGAINST THE POLICE THAT IS RELEVANT TO HIS CREDIBILITY

The plaintiff incorrectly argues that evidence that does not prove his character for truthfulness is not admissible under Rule 608(b). In actuality, so long as evidence is not offered solely to prove a witness' character for truthfulness, it is not *restricted* by Rule 608(b). Fed. R. Evid. 608 advisory committee notes on 2003 amendments; see also United States v. Abel, 469 U.S. 45 (1984)(allowing extrinsic evidence that witness was biased in favor of defendant). Rule 608(b) prohibits the use of extrinsic evidence to prove specific instances of conduct for the purpose of attacking or supporting a witness' character for truthfulness. Fed. R. Evid. 608(b). The Rule applies only to evidence introduced solely to attack or support the witness' *character for truthfulness* and not to other evidence impeaching credibility, such as bias, competency, and contradiction. Fed. R. Evid. 608 advisory committee's note on 2003 amendments. "By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment to Rules 402 and 403." Id.

The jury's ability to weigh the credibility of the plaintiff's testimony would be adversely affected if the jury is not allowed to hear evidence indicating that the plaintiff has a history of

animosity or ill-will towards the police that predates the events at issue. Upon learning of the subject matter of previous litigation between the plaintiff and the police, the jury may reasonably infer that the plaintiff's testimony is clouded by hostility towards the police. See United States v. Gambler, 662 F.2d 834, 839 (D.C. Cir. 1981).

Both cases relied upon by the plaintiff are inapplicable in this context. In neither case did the proponents offer the evidence for any purpose other than establishing the witnesses' character for truthfulness, and they were thereby restricted by Rule 608(b). See generally, United States v. Schwab, 886 F.2d 509 (2d Cir. 1989); Sabir v. Jowett, 143 F.Supp.2d 217 (D.Conn. 2001). Here, the defendant offers evidence of the plaintiff's history with the police in order impeach by establishing bias—an approach not restricted by Rule 608(b). "There is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." Abel, 469 U.S. at 471. For this reason, the restriction of Rule 608(b) does not apply to any evidence establishing the plaintiff's bias.

Finally, unlike the evidence at issue in those cases cited by the plaintiff, the relevance of the plaintiff's predisposition towards the police is not dependant on the plaintiff's culpability for the actions that were the subject of his prior arrests and litigation against the police. The fact that the plaintiff was not convicted after his previous arrests is not relevant to the issue of whether those incidents contributed to the plaintiff's bias towards the police prior to the incident at issue in this case. A reasonable jury might conclude that a witness who was justifiably frustrated with the police prior to the events at issue is less credible than one who had no previous contact with the police or one who had a positive relationship with the police.

### III. THE DEFENDNTS SHOULD BE PERMITTED TO TESTIFY, FROM THEIR OWN OBSERVATIONS, THAT THE PLAINTIFF APPEARED INTOXICATED

The plaintiff's Motion in Limine seeks to preclude the defendants from testifying that the plaintiff was intoxicated at the time of the incident. The plaintiff's argument rests upon the contention that, in the absence of field testing, police officers are not experts in recognizing intoxication and therefore cannot testify as experts on the issue of the plaintiff's intoxication. Assuming that this contention is correct, it does not justify precluding the officers from testifying from their own first hand knowledge as to the plaintiff's intoxication. The officers' observations cannot be fully conveyed to the jury if their testimony is limited to the minute indicia of intoxication and they are not permitted to express the everyday inference that those details amounted to an appearance of intoxication.

Lay witnesses are free to testify in the form of opinion or inference provided that the testimony (a) is rationally based on their own perceptions, (b) is helpful in understanding the witnesses' testimony or determining a fact at issue, and (c) is not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. The plaintiff's Motion in Limine acknowledges that the officers formulated their opinion based on their own observations of the plaintiff and that any conclusions the officers reached did not require specialized knowledge or training. The admissibility of the officers' testimony on the issue of intoxication therefore turns upon whether their conclusions will be helpful to the jury.

A witness is permitted to testify as to his own impressions and conclusions when they result from "a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness." United States v. Yazzie, 976

F.2d 1252, 1255 (9th Cir. 1992). "A witness who testifies that an individual who he saw staggering or lurching along the way was drunk is spared the difficulty of describing, with the precision of an orthopedist or choreographer, the person's gait, angle of walk, etc." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1196 (3d Cir. 1995)(citing State v. Hall, 353 N.W.2d 37, 43 (S.D. 1984), where police officers were permitted to offer lay testimony as to defendant's intoxicated state). Because an individual's intoxication is revealed through a combination of details such as complexion, speech, posture, and motor mechanics, the jury must be allowed to hear the non-technical inferences drawn by the officers at the scene in order to fully understand the scenario being described.

    The plaintiff's argument addresses only the issue of whether police officers are experts in recognizing intoxication, not whether they can state their opinions and inferences while testifying as lay persons. In State v. Lamme, the only case cited by the plaintiff that addresses the issue of lay testimony on intoxication, the court states unequivocally that Connecticut law permits lay witnesses to testify as to their opinion of a person's intoxication. 563 A.2d 1378, 1376 (Conn. App. 1989)(citing State v. Jones, 2 A.2d 374 (Conn. 1938)). By allowing the officers to testify as to the inferences they drew from their first hand observation of the plaintiff, the Court can ensure that the jury is presented with relevant and otherwise incommunicable testimony, while sparing the plaintiff from the potentially prejudicial "gloss of expertise" associated with the presentation of expert testimony.

IV. **THE DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVDIDENCE THAT THERE WERE EMPTY BOTTLES AND/OR CANS OF BEER IN KELEMENCKY'S CAR AT THE TIME OF THE ARREST.**

The plaintiff has sought to exclude evidence of beer cans and/or bottles that were found in his automobile at the time of arrest. The defendant respectfully submits that such evidence must be admitted in order for the defendants to respond to the plaintiff's allegation that he was falsely arrested and maliciously prosecuted for driving while intoxicated. The plaintiff's claims necessarily bring into issue the reasonableness of the officers' conduct at the time of arrest. In particular, the plaintiff's false arrest claim brings into question the issue of whether the officers had probable cause to believe the plaintiff was driving while intoxicated.

A plaintiff cannot sustain a federal civil rights claim for false arrest where the arresting officer had probable cause. Astrada v. Howard, 979 F. Supp. 90, 96 (D. Conn. 1997). To find probable cause, an officer "need only have a substantial basis of fact from which [it] can be inferred." Murphy v. Comm'r of Motor Vehicles, 757 A.2d 561, 569 (Conn. 2000). Probable cause is established through the totality of the circumstances at the time of arrest, rather than by any one piece of evidence individually. Id. at 569. The presence of alcohol containers in the driver's automobile is repeatedly cited by courts as part of the total mix of evidence that can establish probable cause of driving while intoxicated. See, e.g., Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002); Pizzo v. Comm'r of Motor Vehicles, 771 A.2d 273 (Conn. App. Ct. 2000). Because probable cause is a complete defense to a false arrest claim, and the presence of alcohol containers in the vehicle helps to establish probable cause, evidence indicating that there were empty alcohol containers in the plaintiff's car is highly relevant to the resolution of his false arrest claim.

The plaintiff argues that the evidence of alcohol containers in his vehicle should be excluded as unfairly prejudicial under Rule 403 of the Federal Rules of Evidence because such evidence may arouse suspicions of his "character" to drink and drive. The plaintiff argues "this would constitute inadmissible propensity character evidence in violation of Federal Rules of Evidence 404(b)." Rule 404(b) provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule is inapplicable in this context, where the plaintiff is not on trial for driving while intoxicated and the defendants are not seeking to incriminate him by proving that he has driven while intoxicated in the past.

The relevance of the alcohol containers in this context is that they describe the scenario that the defendants were presented with when they concluded that probable cause existed to charge the plaintiff with driving under the influence; the containers are therefore probative of what the defendants reasonably could have concluded as to the plaintiff's intoxication. Their relevance does not depend on any improper inferences about the defendant's character. Even if the containers had merely fallen out of a bag of recyclables, as the plaintiff suggests, they are still highly relevant to the issue of probable cause because a reasonable officer could have believed otherwise at the time of the arrest.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motions to Preclude should be denied.

DEFENDANT,
RICHARD WILDMAN

BY:_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar No. ct17849
    Updike, Kelly & Spellacy, P.C.
    One State Street
    Hartford CT 06123-1277

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed First Class, in the United States mail, postage prepaid, this ____ day of June 2004 to the following pro se party of record:

Tavis O. Tindall, Esq.
MOYNAHAN, RUSKIN, MASCOLO
 & MINNELLA
141 East Main Street
Waterbury, CT 06722

Thomas R. Gerarde, Esq.
John J. Radshaw III, Esq.
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114

Stephen R. Sarnoski, Esq.
Attorney General's Office
Public Safety & Special Revenue
MacKenzie Hall, 110 Sherman Street
Hartford, CT 06105

By:_____
JAMES N. TALLBERG, ESQ.
Updike, Kelly & Spellacy, P.C.